UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CREATIVE PLAYTHINGS FRANCHISING,
CORP., CREATIVE PLAYTHINGS, LTD., and
CP LICENSING CORP.,

Plaintiffs,

v.

JAMES A. REISER, JR.,

Defendant.

Civil Action No. 09-cv-11456

JAMES A. REISER, JR.,

Plaintiff-in-Counterclaim,

v.

CREATIVE PLAYTHINGS FRANCHISING,
CORP.,

Defendant-in-Counterclaim.

**MEMORANDUM OF LAW IN SUPPORT OF CREATIVE PLAYTHINGS
FRANCHISING CORP.'S MOTION FOR SUMMARY JUDGMENT ON
JAMES A. REISER'S COUNTERCLAIM**

**Introduction**

Creative Playthings Franchising, Corp. ("CP Franchising") submits this memorandum of

law in support of its Motion for Summary Judgment on the Counterclaim filed by James A.

Reiser, Jr. ("Mr. Reiser").  Mr. Reiser's claims are barred, in their entirety, by a contractual

limitations provision in his Franchise Agreement that precludes him from bringing claims not

filed within *the earlier of* (i) one year after the date of discovery of any wrongdoing or (ii) 18

months after the date of the first act or omission constituting such wrongdoing.  The factual

predicate for Mr. Reiser's Counterclaim concerns certain pre-contract statements allegedly made in 2004, *more than 5 years before he filed his Counterclaim*. Because Mr. Reiser filed his Counterclaim well beyond the 18-month limitations period in the Franchise Agreement, his claims must be dismissed as untimely. Mr. Reiser also testified at deposition that he was aware of the facts that support each of his claims no later than July 2008; however, he waited more than a year, until October 13, 2009, before he filed his Counterclaim. Any reliance on the one-year "discovery" limitations provision is therefore unavailing as well.

Count I of the Counterclaim (Breach of the Implied Covenant of Good Faith and Fair Dealing) must be dismissed for the separate reason that pre-contract negotiations are *not* subject to the implied covenant of good faith and fair dealing, and yet the entirety of this count is based on statements allegedly made *before* Mr. Reiser signed the Franchise Agreement. Mr. Reiser also has admitted at deposition that CP Franchising did not actually deprive him from receiving the benefit of any particular provision in the Franchise Agreement.

Count II of the Counterclaim (Fraudulent Inducement) also must be dismissed for independent reasons. Mr. Reiser has taken substantial discovery, yet he still has not pleaded fraud with sufficient particularity under Rule 9(b), continuing to base his fraud allegations merely "on information and belief." Mr. Reiser also cannot satisfy essential elements of his fraud claim, including: (i) no evidence that CP Franchising made any knowingly false statements; (ii) no reasonable reliance based on the integration clause and the express disclaimers in the Franchise Agreement and the Uniform Franchise Offering Circular ("UFOC"); and (iii) failure to specify any damages flowing from his fraud claims.

**Procedural History**

CP Franchising, along with its affiliates (the "Creative Playthings Affiliates"), brought this action against Reiser, seeking money damages and injunctive relief flowing from Reiser's default under a certain Franchise Agreement and his improper use of the "Creative Playthings" registered trademark and trade name after termination of his Franchise Agreement.  Reiser agreed to a stipulated protective order to cease further use of the "Creative Playthings" trademark and trade name, and then filed a Counterclaim against CP Franchising.

For many of the same reasons set forth herein, CP Franchising moved to dismiss Mr. Reiser's Counterclaim.  The Court (Stearns, J.) denied the Motion to Dismiss, but did so without prejudice to renew after the close of discovery, and with a cautionary note about the apparent deficiencies in Mr. Reiser's claims, stating:

> Electronic ORDER entered denying [25] Motion to Dismiss Counterclaim without prejudice.  ***While at first blush the court recognizes the validity of some of plaintiffs' legal arguments, because of the fact-laden context of the motion, it is premature***.  Therefore the motion is DENIED WITHOUT PREJUDICE to be renewed, if appropriate, upon the completion of discovery.  (emphasis added)

Discovery has now been completed, and the facts learned in discovery have only served to bolster the legal arguments that support the dismissal of Mr. Reiser's Counterclaim.

**Argument**

I.    Standard of Review

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995) (*quoting* Fed. R. Civ. P. (56(c)).  "To succeed [on a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position."  Rogers v. Fair,

902 F.2d 140, 143 (1st Cir. 1990). "Once the moving party has properly supported its motion for summary judgment, *the burden shifts to the nonmoving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'*" Barbour, 63 F.3d at 37 (*quoting* Andersen v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)) (emphasis added).

The non-moving party must demonstrate that "*every essential element* of its claim … is at least trialworthy." Price v. GMC, 931 F.2d 162, 164 (1st Cir. 1991) (emphasis in original). "There must be –sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Rogers, 902 F.2d at 143 (*quoting* Andersen, 477 U.S. at 249-50). The First Circuit has made clear that the "core purpose" of the summary judgment process is to "pierce the boilerplate of the pleadings" and to "evaluate the proof to determine whether trial will serve any useful purpose." Int'l Ass'n of Mach. & Aerospace Workers, AFL-CIO v. Winship Green Nursing Center, 103 F.3d 196, 205 (1st Cir. 1996).

II.      Mr. Reiser's Claims Are Barred by the Contractual Limitations Provision in the Franchise Agreement.

A threshold obstacle to Mr. Reiser surviving summary judgment is the contractual limitations provision set forth in Section 6.09 of the Franchise Agreement, which bars any claim brought more than 18 months after the first act constituting alleged wrongdoing:

> Notwithstanding any provision of law which provides for a longer limitations period, we agree that neither will bring, commence or maintain an action or claim of any kind, in connection with any liability or obligation of the other party arising in connection with this Agreement or the relationship created thereby, or otherwise, unless brought before the expiration of **the earlier of** (i) one (1) year after the date of discovery of the facts resulting in such alleged liability or obligation, or if earlier, the date such facts should or could have been discovered with reasonable diligence; or (ii) **eighteen (18) months after the date of the first act or omission giving rise to such alleged liability or obligation**. **Actions and claims brought or asserted after expiration of the applicable limitations period shall be barred**.

[SOF ¶ 20 (emphasis added).][1]   The allegations underlying all of Mr. Reiser's claims concern statements made before he signed the Franchise Agreement, *more than 5 years before he filed his Counterclaim.*  Mr. Reiser's claims must therefore be dismissed as untimely.

Mr. Reiser has suggested that he should have the benefit of the "discovery" rule in determining the timeliness of his Counterclaim.  Even if Mr. Reiser was afforded that benefit, however, his claims would still be untimely.  The "discovery" limitations provision in Section 6.09 of the Franchise Agreement bars Mr. Reiser's claims unless brought within "one (1) year after the date of discovery of the facts resulting in such alleged liability or obligation, or if earlier, the date such facts should or could have been discovered with reasonable diligence." [SOF ¶ 20.]  It is undisputed that Mr. Reiser was aware of all facts that support his claims no later than July 2008, when he attempted to convert his franchise to a dealer after learning that his product pricing was higher than Creative Playthings corporate stores and not substantially better than certain dealers.[2]  [SOF ¶¶ 37-38, 44-50, 64-68.]  For unknown reasons, however, Mr. Reiser waited more than a year later, until October 13, 2009, to file his Counterclaim.  His claims are therefore still barred as untimely.

It is well-established that "Massachusetts law allows parties to contract for limitations periods shorter than the limitations period provided by law, as long as the agreed upon period is reasonable."  Krumholz v. AJA, LLC, 691 F. Supp. 2d 252, 256 (D. Mass. 2010) (granting summary judgment for franchisor); see also Alcorn v. Raytheon Co., 175 F. Supp 117, 121 (D. Mass. 2001) (granting motion to dismiss); I.V. Svcs. of America, Inc. v. Inn Dev. & Mgmt., Inc., 7 F. Supp. 2d 79, 86 (D. Mass. 1998), aff'd 182 F.3d 51 (1st Cir. 1999) (affirming grant of summary

---

[1] Supporting references are to the L.R. 56.1 Statement of Undisputed Material Facts ("SOF") filed by CP Franchising simultaneously herewith.

[2] Mr. Reiser also has admitted that he was aware no later than 2007 that statements allegedly made by CP Franchising about earnings claims and profits had proved to be false.  [SOF ¶¶ 37-38.]

judgment).  In <u>Krumholz</u>, Judge Tauro found it õnotableö that õcourts applying Massachusetts law have determined periods ranging from ninety days to thirty-nine months to be reasonable,ö and thus held that a one-year contractual limitations provision in a franchise agreement was valid and enforceable.  <u>Krumholz</u>, 691 F. Supp. 2d at 256-57.

The First Circuit and other courts in this district have similarly upheld one-year contractual limitations provisions as valid and enforceable.  <u>See</u> <u>Hays v. Mobil Oil Corp.</u>, 930 F.2d 96, 100 (1st Cir. 1991) (affirming summary judgment for franchisor based on limitations provision in franchise agreement); <u>see also</u> <u>Reynolds Ind., Inc. v. Mobil Oil Corp.</u>, 618 F. Supp. 419, 423 (D. Mass. 1985) (dismissing plaintiffs claims as untimely); <u>IBM v. Catamore Enterprises, Inc.</u>, 548 F.2d 1065, 1073 (1st Cir. 1976); <u>OneBeacon America Ins. Co. v. ADT Security Svcs., Inc.</u>, 2008 WL 2484862, *6 (D. Mass. June 13, 2008) (granting summary judgment) (attached hereto as **Exhibit A**).  The First Circuit also has confirmed the validity of a one-year limitations period even where there is unequal bargaining strength, such as between a big corporation and a õsmall consumer.ö[3]  <u>IBM</u>, 548 F.2d at 1076; <u>Hays</u>, 930 F.2d at 100 n.7.

This case is on all fours with the decision in <u>Krumholz</u>, which also involved a contractual limitations provision in a franchise context where the franchisee made fraud allegations against a franchisor concerning operating costs and earnings claims.  <u>Krumholz</u>, 691 F. Supp. 2d at 254.  Similar to the õdiscoveryö limitations provision in Mr. Reiserø Franchise Agreement, the franchise agreement in <u>Krumholz</u> contained the following limitations provision:

> Any and all claims í  arising from or relating to this agreement or the relationship among the parties shall be barred unless an action or legal proceeding is commenced within one (1) year from the date the claimant knew or should have known of the facts giving rise to such claims.

---

[3] As noted in <u>Reynolds</u>, the UCC, as adopted in Massachusetts, also õexpressly permits contracting parties to reduce the period of limitation for commencing action on a contract to one year.ö  <u>Reynolds</u>, 618 F. Supp. at 423 (*citing* M.G.L. c. 106, § 2-725).

Id. at 256.  For the same reasons that Judge Tauro granted summary judgment for the franchisor in Krumholz, CP Franchising is entitled to summary judgment in this case.

Mr. Reiser has suggested that the limitations provision in his Franchise Agreement does not apply to claims for fraud and breach of the implied covenant of good faith and fair dealing.  Judge Tauro rejected that same argument by the franchisee in Krumholz, holding "that the language of the limitations clause is broad enough to encompass all of Plaintiffs' claims, including the statutory claim brought pursuant to M.G.L. c. 93A." Krumholz, 691 F. Supp. 2d at 257 (citing Hays, 930 F.2d at 100).  Much like the contractual limitations in Krumholz, the limitations provision in Mr. Reiser's Franchise Agreement applies to "an action or claim **of any kind**, in connection with **any liability or obligation** of the other party arising in connection with this Agreement or the relationship created thereby, or otherwise."  This limitations provision broadly covers all claims that might arise between the parties.

Mr. Reiser's claims are time-barred under both subsections of the contractual limitations provision in Section 6.09 of the Franchise Agreement.  Reiser's claims are based on alleged misrepresentations that occurred *more than 5 years before he file his Counterclaim*, well beyond the 18-month contractual limitations period.  Similarly, because it is undisputed that Mr. Reiser was aware of the facts underlying each of his claims more than one year before he filed his Counterclaim, his claims must fail as untimely for that separate reason.

III.   Mr. Reiser Cannot Prove Essential Elements of His Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

The purpose of the implied covenant of good faith and fair dealing "is to ensure that neither party interferes with the ability of the other to enjoy the fruits of the contract." Chokel v. Genzyme Corp., 449 Mass. 272, 276 (2007) (internal citation omitted).  The SJC has held, however, that "[t]he scope of the covenant is only as broad as the contract that governs the

particular relationship," and "does not supply terms that the parties were free to negotiate, but did not, nor does it –create rights and duties not otherwise provided" for in the contract." Id. (quoting Uno Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 388 (2004)).

Mr. Reiser has not alleged that CP Franchising breached any terms of the Franchise Agreement. Rather, his claim stems from oral representations allegedly made *before* he signed the Franchise Agreement. [Counterclaim ¶ 23.] At deposition, Mr. Reiser confirmed that each of his allegations to support Count I of his Counterclaim "were all things that occurred í prior to signing the [Franchise Agreement]." [SOF ¶ 77.] The covenant does not govern contract negotiations – "It governs the performance of contracts but not their formation." Renovator's Supply, Inc. v. Sovereign Bank, 72 Mass. App. Ct. 419, 433 (2008). Mr. Reiser also must prove that some post-contract conduct by CP Franchising deprived him from receiving the "fruits" of some part of the Franchise Agreement. This he cannot do. At deposition, Mr. Reiser admitted that there was "[n]o provision of the contract" that he was deprived of as a result of any conduct by CP Franchising. [SOF ¶ 76.] For these separate reasons, Mr. Reiser's claims must fail.

IV.  Mr. Reiser's Fraud Claim Must Fail Because He Has Not Pled Fraud with the Specificity Required by Rule 9(b) and He Has Not Pled the Necessary Elements of Fraud.

A.  *Mr. Reiser's allegations of fraud based "upon information and belief" are fatally deficient under Rule 9(b).*

Mr. Reiser's claim that CP Franchising made knowingly false statements to induce him to enter into the Franchise Agreement is based solely "upon information and belief." [Counterclaim ¶ 9.] Notwithstanding substantial discovery, including written discovery and no less than 12 depositions of current and former Creative Playthings employees, Mr. Reiser still has not pleaded fraud with sufficient particularity under Rule 9(b); rather, he has continued to base the bulk of his fraud allegations "on information and belief" without providing the source of the information and the supporting facts on which the belief is founded.

These unsupported allegations are exactly the type of "conclusory allegations" that this Court has previously cautioned against.  Ex rel. Gublo v. Novacare, Inc., 62 F. Supp. 2d 347, 354 (D. Mass. 1999).  "Allegations made upon information and belief are still subject to the Fed. R. Civ. P. 9(b) particularity requirements that a complaint 'set[] forth the fact on which the belief is founded.'"  In re Neurontin Mkting, Sales Practices and Products Liab. Litigation, 618 F. Supp. 2d 96, 108 (D. Mass. 2009).  "[T]he First Circuit looks cautiously upon plaintiffs alleging fraud purely on the basis of 'information and belief.'"  In re Boston Tech, Inc., 8 F. Supp. 2d 43, 53 (D. Mass. 1998).   In fact, this Court has routinely dismissed fraud claims founded on "information and belief" where a party fails to allege the supporting facts on which the belief is founded.  See, e.g., Gublo, 62 F. Supp. 2d at 354; In re Neurontin, 618 F. Supp. 2d at 108; Enterprise Fin. Leasing Co. v. Westford Regency Inn, Inc., 1990 WL 279512, *1-2 (D. Mass. Oct. 26, 1990) (attached as **Exhibit B**); see also Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985); Wayne Inv., Inc. v. Gulf Oil Corp., 739 F.2d 11, 13 (1st Cir. 1984).  "[C]ourts have uniformly held inadequate a complaint's general averment of the defendant's 'knowledge' of material falsity, unless the complaint *also* sets forth specific facts that make it reasonable to believe that defendant knew that a statement was materially false."  Blacksmith Inv., LLC v. Cives Steel Co., 228 F.R.D. 66, 73 (D. Mass. 2005); see also Greenstone v. Cambex Co., 975 F.2d 22, 25 (1st Cir. 1992); Whelan v. Intergraph Corp., 889 F. Supp. 15, 20 (D. Mass. 1995).

"Here, there is a complete lack of any facts on which [Mr. Reiser's] belief is founded."  Hayduk, 775 F.2d at 444.  The crux of Mr. Reiser's allegations concerning a key element of his claim – that CP Franchising made knowingly false representations – is based wholly on "information and belief":

> Many of the representations made during the Sales Pitch have proven to be false. Moreover, upon information and belief, Franchisor knew the statements were false at the time they were made.

[Counterclaim ¶ 9.]   Without supporting facts regarding his basis for believing that he was defrauded, "the allegation becomes a conclusional accusation of the sort that is proscribed by Rule 9(b)." Hayduk, 775 F.2d at 444.  Mr. Reiser also "cannot satisfy the requirements of Rule 9(b) merely by pleading 'fraud by hindsight'." In re Boston Tech. Inc., 8 F. Supp. 2d 43, 53 (D. Mass. 1998); see also Greenstone, 975 F.2d at 25-27; see also Piantes v. Pepperidge Farm, Inc., 875 F. Supp 929, 933 (D. Mass. 1995) (dismissing fraud claim where no evidence that defendant intended to breach a promise at the time it was made); Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co. 976 F.2d 58, 64 (1st Cir. 1992) (affirming dismissal of fraud claim).

> ### B.   *Mr. Reiser also has failed to allege essential elements of his fraud claim.*

Under Massachusetts law, to sustain a claim for fraudulent inducement against CP Franchising, Mr. Reiser must prove that: (1) CP Franchising made statements that were knowingly false; (2) CP Franchising made the false statements with the intent to deceive; (3) the statement was material to Reiser's decision to sign the Franchise Agreement; (4) Reiser reasonably relied on the statement; and (5) Reiser was injured as a result of his reliance.  See Kenda Corp. v. Pot-o-Gold Money League, 329 F.3d 216, 225 (1st Cir. 2003); see also Turner v. Johnson & Johnson, 809 F.2d 90, 95 (1st Cir. 1986); Berwind Prop. Mgmt. Group, Inc. v. Environ. Mgmt. Group, Inc., 2007 WL 4707647, *3 (D. Mass. Feb. 5, 2007) (attached as **Exhibit C**); Learning Express, Inc. v. Ray-Matt Enterp., Inc., 74 F. Supp. 2d 79, 84-85 (D. Mass. 1999).

> ### 1.   **There is no evidence of any knowingly false statements**.

In his Counterclaim, Mr. Reiser originally alleged that Don Hoffman, the President of CP Franchising, made the following "knowingly false representations" to induce him to sign the Franchise Agreement:

     a.   CP Franchising was to set up its franchisees with a "showroom format full of 'Creative Playthings' products, -just like in the corporate stores";

     b.   CP Franchising was to provide a "preferred pricing" structure commensurate with Creative Playthings corporate stores;

     c.   There would be no Creative Playthings dealership within Mr. Reiser's exclusive territory;

     d.   Representatives from CP Franchising would visit his franchise store and offer suggestions on how to increase profits;

     e.   CP Franchising would provide in-house advertising for his franchise store; and

     f.   During a sales pitch, prior to Mr. Reiser deciding to purchase a franchise business, Mr. Hoffman told Mr. Reiser that "if [he] achieved [$1,000,000] in gross sales, [he] would net at least [$200,000]."

[Counterclaim ¶¶ 9-10.]

     Mr. Reiser has admitted at deposition, however, that many of these alleged statements have proved to be true, including that the showroom format of his franchise store was a "mirror image" of the corporate stores [SOF ¶ 23]; that he was, in fact, charged a 4% trademark usage fee (or royalty) [SOF ¶ 24]; that there were no Creative Playthings dealerships in his Exclusive Territory [SOF ¶ 25]; that Mr. Hoffman and other Creative Playthings representatives visited his franchise store at least once per year [SOF ¶ 26]; and that he received advertising support from Creative Playthings [SOF ¶ 27]. Mr. Reiser has therefore narrowed his fraud claims to three specific allegedly false representations:

     a.   <u>$200,000 Profit Statement</u>.  Mr. Reiser claims that, at a meeting during the Summer of 2004, before Reiser signed the Franchise Agreement, Don Hoffman stated: "I'm not sure I should be telling you this, but if you hit a million dollars in revenue, you should be making $200,000 in profit."  [SOF ¶¶ 28-32.]

     b.   <u>Corporate Store Pricing Statement</u>.  Mr. Reiser claims that he was told by Don Hoffman that his franchise would receive the same product pricing as Creative Playthings corporate stores.  [SOF ¶ 28.]

     c.   <u>Dealer Pricing Statement</u>.  Mr. Reiser claims that Vito Parisi stated "sometime during the summer of 2004 – [p]robably over the phone" that the franchise stores would receive better product pricing than dealers.  [SOF ¶ 28.]

Even assuming for purposes of summary judgment that CP Franchising made these representations, Mr. Reiser has adduced no evidence that statements about corporate store pricing and dealer pricing were actually false when made – he simply alleges that these statements were knowingly false based "upon information and belief." [Counterclaim ¶ 9.] Not only are such bare-bone allegations insufficient to survive summary judgment, in 2004, when Mr. Reiser claims these statements about product pricing were made, *they were actually true.*

From 2004 through 2006, Mr. Reiser's franchise was charged the same gross margin on product as the Creative Playthings corporate stores, and it was not until Pamela Cokin changed the company's inter-company pricing in 2007 that the product gross margins began to diverge. [SOF ¶¶ 52-60.]  During that same time, Mr. Reiser's franchise also received preferential pricing over every Creative Playthings dealer, and it was not until 2006, when Creative Playthings began a dealer relationship with "Watsons" (a dealer in the Midwest), that there existed a dealer with a product gross margin even close to the franchise stores – and even then, the franchise stores still received better pricing and also had the added benefit of having a license to use the "Creative Playthings" name and trademark.  [SOF ¶¶ 69-72.]

The statements that Mr. Reiser attributes to CP Franchising about product costs were actually true when made.  The fact that circumstances changed over the course of several years of operations – causing Creative Playthings to revamp its inter-company cost structure – does not equate to fraud in the first instance.  See <u>Suna v. Bailey</u>, 107 F.3d 64, 69 (1st Cir. 1997); <u>see also</u> <u>Greenstone</u>, 975 F.2d at 25-27 (disclaiming "fraud by hindsight"); <u>Armstrong v. Rohm & Haas Co.</u>, 349 F. Supp 2d 71, 81 n.14 (D. Mass. 2004) (holding that promises are not false statements merely because the promise ultimately is not kept).

> **2.    Mr. Reiser cannot show "reasonable reliance" on the allegedly false statements.**

Reiser also has failed to satisfy the "reasonable reliance" element of his fraud claim.  Key to the reliance element of his fraud claim is his "reasonable" reliance on them – if his reliance was not reasonable, it is not actionable.  <u>Zimmerman v. Kent</u>, 31 Mass. App. Ct. 72, 77 (1991); <u>In re Neurontin</u>, 618 F. Supp. 2d at 108; <u>L.A.R. Svc. Center, Inc. v. Whirlpool Corp.</u>, 896 F. Supp. 48, 50 (1995); <u>Elias Bros.</u>, 831 F. Supp. at 922.  Even assuming for purposes of summary judgment that CP Franchising allegedly made false statements about product pricing and earnings claims, Mr. Reiser could not have reasonably relied upon such representations in deciding to sign the Franchise Agreement, because they deal with subject matters that were specifically covered by the terms of the UFOC and the Franchise Agreement, which trumped any prior oral representations CP Franchising might have made.

Mr. Reiser reviewed the UFOC with his attorney and several other advisors.  [SOF ¶ 3.] The UFOC was a standard disclosure document issued by CP Franchising to prospective franchisees in accordance with guidelines provided by the Federal Trade Commission ("FTC"). [<u>Compare</u> UFOC <u>with</u> 16 C.F.R. Parts 436 and 437].  The UFOC provided detailed information about earnings claims and comparisons of franchise stores to corporate-owned stores, including but not limited to:

1. "No Net Profit (Loss) Information.  ***We have not furnished any gross or net profit information.  Information on expenses, profits and loss can vary widely and accordingly, any disclosures in this area may be misleading***."

2. "Advantages of Affiliate's Company Owned Stores.  ***Our affiliates have certain advantages over Franchise Owners that may yield more favorable results than a Franchise Owner may receive***.  They have more experience and other advantages such as of economies of larger scale operations as well as name recognition in certain markets.  These advantages may not be available to Franchise Owners initially.  Also, affiliate owned stores pay no trademark usage fees, advertising fees or other fees as in the case of Franchise Owners."

3. õCaveat.  ***Prospective Franchise Owners must understand that they may not achieve results as favorable as those set forth below*** for a variety of reasons í  .ö

[SOF ¶ 9 (emphasis added).]

The UFOC also provided a standard FTC õCautionö provision that specifically disclaimed business success and guaranteed sales or profits, as follows:

CAUTION

THE FOLLOWING FIGURES DERIVE FROM THE OPERATONS OF STORES THAT SOLD THE AMOUNTS STATED BELOW.  **THERE IS NO ASSURANCE YOU WILL DO AS WELL.  IF YOU RELY UPON OUR FIGURES, YOU MUST ACCEPT THE RISK THAT YOUR STORE WILL NOT DO AS WELL.**

[Chart omitted]

ACTUAL RESULTS VARY FROM STORE TO STORE, AND **CREATIVE PLAYTHINGS FRANCHISING, CORP. CANNOT PREDICT THE RESULTS OF ANY NEW PARTICULAR FRANCHISE LOCATION.**

THE FINANCIAL INFORMATION HAS BEEN PREPARED BY CREATIVE PLAYTHINGS FRANCHISING, CORP. WITHOUT REVIEW BY AN INDEPENDENT ACCOUNTANT.  ACTUAL SALES FROM THE OPERATION OF A FRANCHISED BUSINESS ARE INHERENTLY SUBJECT TO UNCERTAINTY AND VARIATIONS DEPENDING UPON CHANGING EVENTS AND ECONOMIC CONDITIONS.  **THERE CAN BE NO GUARANTEE THAT THESE STATEMENTS PREDICT THE SALES OF ANY FRANCHISE OWNER.  ANYONE WHO USES THE ABOVE INFORMATION TO PREPARE HIS/HER OWN PROFORMA STATEMENT MUST ACCEPT THE RISK THAT HIS/HER OWN FRANCHISED BUSINESS MAY PERFORM SUBSTANTIALLY WORSE THAN THOSE INCLUDED IN THE AVERAGES ABOVE.**

[SOF ¶ 10 (emphasis added).]

Mr. Reiser received a completed original of the Franchise Agreement on May 21, 2004.

[SOF ¶ 11.]  After consulting with his attorney and other advisors, and having negotiated certain changes to the Franchise Agreement, on August 20, 2004, Mr. Reiser signed the Franchise Agreement with CP Franchising.  [SOF ¶¶ 12-13.]  Like the UFOC, the Franchise Agreement also contained an unambiguous õCaveatö provision that disclaimed any representation or warranty about the success of Mr. Reiserøs franchise, and affirmed Mr. Reiserøs agreement to enter into the Franchise Agreement independent of any prior representations:

**CAVEAT**

A. You agree that the success of the business venture to be undertaken by you by virtue of this Agreement depends, to a large extent, upon your ability as an independent businessperson, and your active participation in the daily affairs of the business as well as other factors. **We do not make any representation or warranty, express or implied, as to the potential success of your business venture.**

B. You acknowledge that you have entered into this Agreement after making an independent investigation of our operations **nor have we made any other representations, including representations of sales or profits to be realized by you in connection with the Franchised Business which are not expressly set forth here or in our Uniform Franchise Offering Circular to induce you to accept this franchise and execute this Agreement**.

[SOF ¶ 21 (emphasis added).]

Section 6.05 of the Franchise Agreement also contained a broad integration clause confirming that no prior oral understandings or agreements would control the parties' franchise relationship:

This Agreement including the preambles and Schedule(s) with respect to its subject matter are a part of this Agreement, which constitutes the entire agreement of the parties, and **there are no other oral or written understandings or agreements between us relating to the subject matter of this Agreement**.

[SOF ¶ 19 (emphasis added.]

There are a plethora of cases where virtually identical disclaimers and integration clauses in franchise agreements and corresponding disclosure documents have barred fraud claims based on prior oral representations similar to those alleged by Reiser. See, e.g., L.A.R. Svc. Center, 896 F. Supp. at 50; Elias Bros. Restaurants, Inc. v. Acorn Enterprises, Inc., 831. F. Supp. 920 (D. Mass. 1993); Curry v. Steve's Franchise Co., 1984 WL 1468 (D. Mass. 1984) (attached as **Exhibit D**); TLH Int'l v. Au Bon Pain Franchising Corp., 1986 WL 13405 (D. Mass. 1986) (attached as **Exhibit E**); Symes v. Bahama Joe's, Inc., 1988 WL 92462 (D. Mass. 1988) (attached as **Exhibit F**); see also Rosenberg v. Pillsbury Co., 718 F. Supp. 1146 (S.D.N.Y. 1989) (applying

Mass. law).  These cases build on the general principle that a party "may not raise as fraudulent any prior oral assertion inconsistent with a contract provision that specifically addressed the particular point at issue."  <u>Turner v. Johnson & Johnson</u>, 809 F.2d 90, 97-98 (1st Cir. 1986); <u>see also</u> <u>Elias Bros.</u>, 831 F. Supp. at 924-27.

In <u>Elias Brothers</u>, the court addressed a fraudulent inducement claim brought in the face of disclaimer and integration clauses much less comprehensive than those present here.  Even so, the court held that, to the extent that the franchisees "relied upon oral representations, their reliance was unreasonable as a matter of law" because the language of the franchise agreement "was more than sufficient to trigger alarm," any and all earlier oral promises or representations were expressly disclaimed."  <u>Elias Bros.</u>, 831 F. Supp. at 925-26 (dismissing fraud claims).

In <u>TLH International</u>, the court faced a franchise dispute that almost mirrors the dispute here, and found that the FTC "Disclosure Statement" – similar to the UFOC in this case – barred any claim of reasonable reliance on prior oral representations.   The court found that the franchisee's reliance on alleged oral representations about financial commitments, sales volume, net profits, and consulting assistance was unreasonable as a matter of law, because the Disclosure Statement specifically addressed those same subject matters, with broad disclaimers about providing estimates and goals.  <u>TLH Int'l</u>, 1986 WL 13405, *2-6.  The court found that it "would be a rare opportunity which could guarantee the expansion described and it would be a rather naïve franchisee who believed the statements were a guarantee."  <u>Id.</u> at *6.

Likewise, the court in <u>Curry</u> dismissed a franchisee's fraudulent inducement claim because of a "Caveat" provision and an integration clause in the franchise agreement that are almost identical to that set forth in the Franchise Agreement in this case.  In both cases, the

corresponding UFOC identified "cautions" or "risk factors" to put the franchisee on notice of the riskiness of the business venture. <u>Curry</u>, 1984 WL 1468, *3. The <u>Curry</u> court thus held:

> This count fails for two reasons. First, the franchise agreement, in direct and unambiguous language, contains the terms and provisions applicable to each party. It contains a clear and express warning as to the speculative nature of the venture. The plaintiffs also acknowledged that their participation was based on their independent investigation of the operations and not upon any representations of profits or other forms of inducement.

<u>Id.</u> at *6 (dismissing fraud claim).

Moreover, Mr. Reiser has admitted at deposition that no one at CP Franchising ever made any guarantees about profits. [SOF ¶¶ 28-31.] The most that Mr. Reiser has alleged is that, during the Summer of 2004, Don Hoffman stated: "I'm not sure I should be telling you this, but if you hit a million dollars in revenue, you *should* be making $200,000 in profit." [SOF ¶ 28-29 (emphasis added).] Not only does this alleged statement trigger obvious alarms, as a matter of law, Mr. Reiser could not have reasonably relied upon such an noncommittal statement as a guarantee that he absolutely would achieve such profits.[4]

For the same reasons that the courts in the above cases dismissed a franchisee's fraudulent inducement claim – as being based on alleged oral representations trumped by the express terms of a UFOC and/or Franchise Agreement, such that there could be no reasonable reliance – so, too, should this Court dismiss Reiser's fraudulent inducement claim. To be sure, if Reiser truly relied upon pre-contract oral representations concerning products costs and profit margins, the UFOC and the Franchise Agreement were more than sufficient "to trigger alarm"

---

[4] Mr. Reiser's own pre-contract earnings projections also belie his contention that he reasonably believed he could capture a 20% return on $1 million in sales. [SOF ¶¶ 33-36.] Moreover, Mr. Reiser was always aware of his product costs, and he received a product cost sheet every year that showed the annual increases in the cost of product he was purchasing from Creative Playthings. [SOF ¶¶ 39-41.] It therefore cannot be the case that he was somehow unaware of his product costs and margins.

that "any and all earlier oral promises or representations were expressly disclaimed."[5]   Elias

Bros., 831 F. Supp. at 925-26.

### 3.      Mr. Reiser has failed to prove any actionable damages.

As a preliminary matter, Mr. Reiser has utterly failed to identify any damages flowing

from his fraud allegations.  As of his first day of deposition, on May 26, 2010, Mr. Reiser had

not yet undertaken to calculate of his claimed damages in his Counterclaim.  [SOF ¶ 78.]  As of

his second day of deposition, on December 8, 2010, Mr. Reiser still had not undertaken to

calculate his claimed damages in his Counterclaim.  [SOF ¶ 79.]  Because Mr. Reiser has failed

at every opportunity to provide evidence of his claimed damages, he cannot prove an essential

element of his claim.

Mr. Reiser also cannot show that any conduct by CP Franchising was the proximate

cause of any damages.  See Hutchins v. Cardiac Science, Inc., 456 F. Supp. 2d 173, 183 (D.

Mass. 2006).  Where reliance on a misrepresentation is alleged, "the misrepresentation is a legal

cause only of those pecuniary losses that are within the foreseeable risk of harm that it creates."

Restatement (Second) of Torts § 548A, comments a and b; see also In re Aoki, 323 B.R. 803,

816 (Bank. 1st Cir. 2005); Sparks v. Fidelity Nat. Title Ins. Co., 294 F.3d 259, 273 (1st Cir.

2002).  At deposition, Mr. Reiser made several admissions that are fatal to his ability to prove

proximate causation.  More specifically, Mr. Reiser testified that *he did not know* whether he

would have signed the Franchise Agreement with CP Franchising had he known that the margins

on his products costs were higher than Creative Playthings corporate stores.  [SOF ¶ 51.]  He

also testified that, even if he had known that dealers were paying the same margins on product

---

[5] Representations such as those made in Elias Brothers – which are similar in nature to those present here –
"in the context of franchisor-franchisee communications constitute nothing more than ‗puffing' or ‗trade talk,' upon
which no reasonable person would rely." Elias Bros., 831 F. Supp. at 927 (*quoting* Schott, 976 F.2d at 65).  "The
alleged misrepresentations consisted only of opinions as to future events.  There were no circumstances indicating
that plaintiff could justifiably rely on these opinions as ‗facts.'" Schott, 976 F.2d at 65.

costs as franchise owners, he "couldn't say for sure" whether he would have opted to become a

dealer.  [SOF ¶¶ 61-63.]  Any alleged misrepresentations about product costs vis-à-vis corporate

stores and dealers therefore could not have been the proximate cause of any of Mr. Reiser's

claimed damages.

V.  Mr. Reiser's Unfair Trade Practices Claims Are Barred by the Terms of the Franchise
    Agreement, and Are Otherwise Based on an Unsupportable Fraud Claim

As a preliminary matter, Mr. Reiser's separate unfair trade practices claims – under both

Massachusetts and Florida law – must fail because they are "absorbed in and vanish[] with the

[meritless] misrepresentation claim" on which they are based.  Macoviak v. Chase Home Mtg.

Corp.. 40 Mass. App. Ct. 755, 760 (1996); see also Pembroke Country Club, Inc. v. Regency

Sav. Bank, 62 Mass. App. Ct. 34, 40-41 (2004) (Chapter 93A claim that is "wholly derivative" of

a failed tort claim also must fail); Private Lending & Purchasing, Inc. v. First Am. Title Ins. Co.,

54 Mass. App. Ct. 532, 539-40 (2002) (Chapter 93A claim based on meritless fraud claim cannot

stand).  Because Mr. Reiser's unfair trade practices claims are based on his unsupportable fraud

claim, those claims too must fail.

   Mr. Reiser's unfair trade practices claims must also must fail for the separate reason that

the Franchise Agreement specifically states that Chapter 93A "shall not apply" to the parties'

dealings.  Section 6.02 of the Franchise Agreement states, in principal part:

> [T]his Agreement shall be deemed executed in Massachusetts and its
> interpretation, validity and performance as well as the relationship of the parties,
> and all of their rights, shall be governed by the laws of the Commonwealth of
> Massachusetts except for Massachusetts G.L. c. 93A as amended and all
> regulations thereunder, which shall not apply.

It cannot be disputed, therefore, that Massachusetts law applies and that no claim under the

Massachusetts unfair trade practices act, Chapter 93A, can be made.  See Canal Elec. Co. v.

Westinghouse Elec. Corp., 406 Mass. 369, 377-78 (1990) (upholding waiver of Chapter 93A based solely on narrower contractual ölimitation of liabilityö provision).

Mr. Reiserøs claim under the Florida unfair trade practices statute also fails for the independent reason that Massachusetts law applies to the Franchise Agreement and the partiesø dealings.   See Mead Corp. v. Stevens Cabinets, Inc., 938 F. Supp. 87, 90 (D. Mass. 1996) (dismissing Chapter 93A claim because the contract was governed by Ohio law).  Moreover, all of the false statements that Mr. Reiser attributes to CP Franchising allegedly were made at its headquarters in Massachusetts.   [Counterclaim ¶¶ 7-9.] There simply are no allegations that could subject CP Franchising to Floridaøs unfair trade practices statute.

### Conclusion

**WHEREFORE**, for the reasons cited herein, CP Franchising respectfully requests that this Court grant its Motion for Summary Judgment, dismissing all claims in Mr. Reiserøs Counterclaim, and that the Court grant such other and further relief as may be just and proper, including an award of attorneysø fees and costs, as required under the terms of the Franchise Agreement and/or by operation of law.

Respectfully submitted,

**CREATIVE PLAYTHINGS FRANCHISING, CORP.,**

By its counsel,

DATED:  January 14, 2011

  /s/ Jason W. Morgan
Jason W. Morgan (BBO #633802)
Colin M. Black (BBO #652319)
**DROHAN TOCCHIO & MORGAN, P.C.**
175 Derby Street, Suite 30
Hingham, Massachusetts 02043
Tel:  (781) 749-7200

## CERTIFICATE OF SERVICE

I, Jason W. Morgan, hereby certify that on January 14, 2011, I served a true and correct copy of the foregoing, by ECF e-file notification, to counsel for Defendant, Steven Shane Smith, Esq., Shannon Law Associates, Inc., One Bowdoin Square, 9th Floor, Boston, MA 02114.

 /s/ Jason W. Morgan
Jason W. Morgan