UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CREATIVE PLAYTHINGS FRANCHISING CORP., CREATIVE PLAYTHINGS, LTD., CP LICENSING CORP.<br><br>Plaintiffs,<br><br>v.<br><br>JAMES A REISER, JR.,<br><br>Defendant<br><br>JAMES A REISER, JR.,<br><br>Plaintiff-in-Counterclaim,<br><br>v.<br><br>CREATIVE PLAYTHINGS FRANCHISING CORP.,<br><br>Defendant-in-Counterclaim | Civil Action No. 09-11456-DLC |

ORDER ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES (#155)

August 3, 2015

CABELL, U.S.M.J.

Following a five-day bench trial, the Court found that plaintiff Creative Playthings Franchising Corp. ("CP Franchising") was entitled to recover attorneys' fees and expenses based upon an attorneys' fees provision in the Franchising Agreement between the plaintiff and defendant James A. Reiser, Jr. (Dkt. No. 153) Through its Motion for Attorneys' Fees and

Expenses, CP Franchising seeks a total of $429,195.44 in fees and expenses. (Dkt. No. 155) The Court agrees that this was a hard-fought case involving factually and legally complex issues, but finds that some reduction in the fees and expenses sought is appropriate.

## I.    THE UNDERLYING CASE[1]

Plaintiff Creative Playthings Ltd. ("CP Ltd.") designs, manufactures and markets outdoor swing sets under the name "Creative Playthings." Plaintiff CP Licensing Corp. ("CP Licensing") owns two federal registrations for the "Creative Playthings" trademark. CP Franchising was created as an affiliate of CP Ltd. and CP Licensing to grant licenses to individuals who wished to own and operate franchised Creative Playthings stores. The defendant was one such franchisee.

In 2004, the defendant and CP Franchising entered into a Franchising Agreement that gave the defendant a license to operate a Creative Playthings franchise in Florida. Among other things, the Franchising Agreement specified the manner in which the defendant could operate his franchise, required the defendant to pay certain fees to CP Franchising and prohibited the use of Creative Playthings' trademarks and confidential information after termination of the Franchising Agreement. The Franchising Agreement contains a Massachusetts choice-of-law provision and an attorneys' fees provision that entitles the prevailing party to recover its "reasonable" legal fees in the event of any suit to enforce the terms of the agreement.

In 2008, the defendant stopped making the royalty payments due under the Franchising Agreement. In August 2009, CP Franchising terminated the defendant's franchise. After receiving the termination letter, the defendant held two birthday parties at his franchise store location and sold a small amount of merchandise.

---

[1] This section is drawn from the Court's January 20, 2015 Findings of Fact and Conclusions of Law, (Dkt. No. 153), which contains a more detailed discussion of the facts of the case.

On September 1, 2009, CP Franchising, CP Ltd. and CP Licensing filed a fourteen-count verified complaint against the defendant. (Dkt. No. 1) The defendant responded by filing an answer raising a number of affirmative defenses, including defenses sounding in fraud, and a four-count counterclaim. (Dkt. No. 17) After more than two years of litigation, a five-day bench trial was held in January 2012. Post-trial briefing followed and the Court eventually made its findings of facts and conclusions of law under Federal Rule of Civil Procedure 52. (Dkt. No. 153) The Court found in favor of the plaintiffs on some, but not all, of their claims and awarded damages, attorneys' fees and expenses. (*Id*.) The Court found in favor of the plaintiffs on all of the defendant's counterclaims. (*Id*.)

The plaintiff's claims and their outcomes are as follows:

1.  *Unpaid Fees*

CP Franchising prevailed on Count I (breach of the Franchising Agreement) and Count II (breach of the implied covenant of good faith and fair dealing), which sought damages for the defendant's failure to pay certain fees due under the Franchising Agreement. The Court awarded $33,163.29 in damages and reasonable attorneys' fees. Count III sought to recover the same unpaid fees sought in Counts I and II, but under an unjust enrichment theory. Because the Court awarded damages on a contract theory, it did not award damages on the alternative quasi-contractual theory.

2.  *Misuse of Intellectual Property*

CP Franchising, CP Ltd. and CP Licensing prevailed on four of their five claims related to the defendant's use of Creative Plaything's trademarks and confidential information after termination of the Franchising Agreement. The successful claims were Count V (federal trademark infringement), Count VI (false designation of origin), Count VIII (common law

trademark infringement) and Count IX (misappropriation of trade secrets). The Court awarded a total of $3,217.00 in damages, but did not award attorneys' fees. CP Franchising did not prevail on Count VII, which alleged that the defendant's use of the Creative Playthings name and mark on his website after termination of the Franchising Agreement amounted to cyberpiracy.

   3. *Failure to Pay For Inventory*

The Court awarded $16,465.75 in damages to CP Ltd. due to the defendant's failure to pay for inventory he received. The Court awarded damages for Counts X and XI under a contract theory and thus did not award damages for Count XII, which sought the same amounts under a quasi-contractual theory. CP Ltd. did not request attorneys' fees for these claims.

   4. *Improper Inventory Order Procedures*

CP Franchising and CP Ltd. prevailed on Count XIII, which alleged that by ordering directly from a supplier the defendant interfered with a business relationship that CP Franchising and CP Ltd. had with the supplier. The Court awarded $9,000.00 in damages. CP Franchising did not request attorneys' fees for this claim.

   5. *Abandoned Claims*

CP Franchising chose not to pursue two of its claims: Count IV, which asked the Court to order an accounting (*i.e.*, access to the defendant's books and records), and Count XIV which sought a declaratory judgment regarding a complaint that the defendant filed in state court, but later dismissed. The claims in the defendant's state court action were similar to those he raised in his unsuccessful counterclaims in this action.

   II.   ATTORNEYS' FEES

The Court found that CP Franchising is entitled to attorneys' fees and expenses because CP Franchising prevailed on Counts I and II, which are state law contract claims over which the

4

Court exercised supplemental jurisdiction pursuant to 15 U.S.C. § 1367(a). Accordingly, CP Franchising's fee request is governed by Massachusetts state law. *Barton v. Clancy*, 632 F.3d 9, 17 (1st Cir. 2011)(a "federal court . . . exercising supplemental jurisdiction over a state law claim must apply state substantive law")(citing *Hoyos v. Telecorp Communs., Inc.,* 488 F.3d 1, 5 (1st Cir. 2007)).

The contract provision that authorizes a fee award specifies that CP Franchising is entitled to "reasonable" legal fees. Under Massachusetts law, there are two permissible methods for determining a reasonable fee amount. In contractual fee cases, Massachusetts courts generally employ a multi-factor analysis. However, courts may also employ what is known as the lodestar approach. *See e.g., In re Volkswagen and Audi Warranty Extension Litig.*, 692 F.3d 4 (D. Mass. 2012) (citing *WHTR Real Estate Ltd. P'ship v. Venture Distrib., Inc.*, 63 Mass. App. Ct. 229, 825 N.E. 2d 105, 111 (2005). The Court is not convinced that a Massachusetts state court would employ the lodestar approach here. However, because both parties have briefed this motion under the apparent assumption that the lodestar approach applies, and because such an approach is permitted under Massachusetts law, the Court will employ the lodestar approach here.

Under both the Massachusetts and First Circuit loadstar approaches, attorneys' fees are calculated by multiplying the number of hours reasonably spent on the case times a reasonable hourly rate. *Fontaine v. Ebtec Corp.*, 415 Mass. 309, 613 N.E.2d 881, 890 (1993); *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984). As the party seeking fees, CP Franchising has the burden of proving that both the rates sought and the number of hours billed are reasonable. *Perfectyourself.com, Inc. v. Accusoft Corp.*, 25 Mass. L. Rptr. 415 (Mass. Super. 2009); *Hensley v. Eckerhart*, 461 U.S. 424, 438 (1982). There is a "strong presumption" that the lodestar represents a "reasonable" fee. *City of Burlington v. Dague*, 505 US 557, 561 (1992).

However, the party opposing a fee application may present arguments and evidence justifying downward adjustment of the lodestar amount. *Id.*

### A. <u>Reasonableness of Hours Spent</u>

When determining the number of hours reasonably spent on a matter, "[t]he usual starting place is the billing record supplied by the plaintiffs." *Fryer v. A.S.A.P. Fire and Safety Corp., Inc.*, 750 F. Supp. 2d 331 (D. Mass. 2010)(citing *Gay Officers Action League v. Commonwealth of Puerto Rico*, 247 F.3d 288, 295-96 (1st Cir. 2001)). The court then subtracts "duplicative, unproductive, or excessive hours." *Gay Officers Action League*, 247 F.3d at 295 (citations omitted). In this case, Drohan Tocchio & Morgan, P.C. represented all three plaintiffs in this matter and billed CP Franchising a total of $524,711.50 in fees for 1,968.15 hours of work performed by three attorneys and an unspecified number of paralegals. (Dkt. No. 157) CP Franchising also paid $33,673.94 for expenses. (*Id.*) With the intent of accounting for unsuccessful claims and duplicative work, CP Franchising has elected not to seek all of the fees and expenses that it incurred. It appears that CP Franchising seeks fees for some of the work performed by attorneys Jason W. Morgan and Colin M. Black, but is not seeking fees for the work performed by attorney W. Prescott Golding or the unnamed paralegals. Through its motion, CP Franchising requests $429,195.44 – or approximately seventy-seven percent of the amount it spent pursuing this matter. (Dkt. No. 155)

The defendant does not dispute CP Franchising's entitlement to some amount of fees and expenses, but contends that the amount sought is excessive. (Dkt. No. 159) First, the defendant argues that CP Franchising's attorneys invested too much time litigating a simple case. This argument is contradicted by the defendant's posture during litigation. By mounting a vigorous defense, filing counterclaims and injecting allegations of fraud into the action, the defendant

turned what might have been a straightforward breach of contract action into something more involved. CP Franchising's counsel responded accordingly. See *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 297-98 (1st Cir. 2001)(rejecting argument that case was too pedestrian to justify fees sought where defendant had adopted a "militant tone" thereby encouraging the plaintiffs to "put more troops in the field"). The Court is cognizant of the fact that it is to greet the use of multiple attorneys on a matter with "healthy skepticism," but finds that CP Franchising's use of two attorneys through trial was reasonable given the nature of the case. *Lipsett v. Blanco*, 975 F.2d 934, 938 (1st Cir. 1992)(use of multiple attorneys reasonable where case is bitterly contested); *Gay Officers Action League*, 247 F.3d at 297 ("[g]iven the complexity of modern litigation, the deployment of multiple attorneys is sometimes an eminently reasonable tactic"). The reasonableness of CP Franchising's staffing levels is underscored by the fact that the defendant's own trial team included three attorneys.

Next, the defendant argues that CP Franchising has not properly documented its attorneys' time. The Court agrees. Though CP Franchising has supported its fee and expense request with billing records[2], certain deficiencies in these records have frustrated the Court's ability to conduct a meaningful assessment of the time spent on individual tasks and whether that time was reasonable. CP Franchising's billing entries do not contain the number of hours spent on each task or the name of the attorney who completed each task. Though the Court might attempt to supply the missing information by making educated guesses (*e.g.,* assuming that entries with a higher billing rate refer to the more senior attorney), it was CP Franchising's burden to supply complete billing information. *Tennessee Gas Pipeline v. 104 Acres of Land*, 32

---

[2] The defendant also argues that CP Franchising should have submitted evidence of the terms of its fee agreement, but cites to no case law imposing such a requirement. Because the lodestar analysis is used to determine a reasonable fee even in cases where the prevailing party agreed to a contingency fee, the terms of the agreement between CP Franchising and its counsel are not particularly critical here.

F.3d 632, 634 (1st Cir. 1994)(plaintiff must submit "detailed contemporaneous time records" including descriptions of tasks performed, dates and the number of hours spent). CP Franchising's attorneys also relied heavily on block billing to account for the time spent on this matter. For example, on May 25, 2011 an attorney billed $1,338.75 for the following:

> Attention to trial exhibits; review correspondence from opposing counsel regarding produced documents; emails regarding subpoenas; review documents produced; review objection to subpoenas and notice of sanctions; conference with Attorney J. Morgan regarding subpoenas and objections; attention to appeal motion and oppositions in limine.

(Dkt. No. 157-1) There is no way for the Court to decipher how much time was spent on each individual task, which makes it difficult to determine whether the time spent was reasonable. Failure to provide detailed time records is grounds to justify disallowance of a fee application, or a "drastic reduction" of the fees sought. *Calhoun v. Acme Cleveland Corp.*, 801 F.2d 558, 560 (1st Cir. 1986). In this case, the Court believes that a twenty-five percent reduction in the fees is appropriate given the issues with the documentation that CP Franchising has provided.

The defendant next argues that the fees sought are disproportionate to the results achieved. The fact that CP Franchising's attorneys' fees exceed the damages recovered is not a grounds for reducing the fee award. *Grant v. Martinez*, 973 F.2d 96, 102 (2nd Cir. 1992)(citing *City of Riverside v. Rivera*, 477 U.S. 561 (1986)). Incomplete success however may justify a reduction in fees. *Id*. at 101. Here, CP Franchising was remarkably successful, recovering most of the monetary damages it sought. Many of its "unsuccessful claims" were actually alternative legal theories for recovering the same damages the Court ultimately rewarded. But because the Court did expressly find that no attorneys' fees should be awarded for CP Franchising's successful intellectual property claims, some downward adjustment of the fee award is warranted. Since all of CP Franchising's claims arose from "the same common core of facts" –

the termination of the Franchising Agreement – only a small adjustment is called for. *Bogan v. City of Boston*, 489 F.3d 417, 428 (1st Cir. 2007)(downward adjustment for partial success is appropriate only where successful and unsuccessful claims are **not** interconnected). The reduction in fees that CP Franchising itself has proposed is sufficient.

Finally, the defendant objects to various entries in CP Franchising's counsels' time sheets as reflecting inefficient or duplicative use of time. The reduction in fees that the Court has already imposed due to inadequate documentation is a proxy for inefficient or unreasonable work. See *Calhoun,* 801 F.2d at 560 (failure to properly document fees justifies reduction in award because inadequate documentation does not allow the opposing party or the Court to assess the reasonableness of the time spent). Thus the Court will not make any additional itemized deductions.

### B. Reasonableness of Rates

The reasonably hourly rate is "the prevailing rate in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)." *Gay Officers Action League,* 247 F.3d at 295. To meet its burden of establishing the reasonableness of the rates charged by its counsel, the plaintiff must "provide evidence that establishes the skill and experience of the person for whom fees are requested as well as evidence that informs the court of the relevant prevailing market rate. *Fryer v. A.S.A.P. Fire and Safety Corp., Inc.*, 750 F. Supp. 2d 331, 340 (D. Mass. 2010).

The Affidavit of Jason W. Morgan that the plaintiff submitted establishes that Mr. Morgan, a partner, has practiced as a commercial litigator in this district since 1996. During the pendency of this matter, Mr. Morgan's billing rates ranged from $295 per hour to $325 per hour. (Dkt. No. 157) Mr. Black, an associate, has eleven years of legal experience, including eight

9

years as a litigator.  His rates ranged from $245 per hour to $265 per hour.  (*Id*.)  As the cases that CP Franchising cites establish, the rates charged by Mr. Morgan and Mr. Black are well within the range charged by attorneys of similar skill and experience in the Boston area.  No reduction in the hourly rates is required.

### III.   COSTS

CP Franchising may recover as part of the award of attorneys' fees those out of pocket cots that would normally be billed to a client.  See *Data General Corp. v. Grumman Sys. Support Corp*., 825 F. Supp. 361, 368 (D. Mass. 1993).  Here, CP Franchising seeks $33,673.94 in expenses for items like postage, copying and research charges.  Such expenses are compensable.  *Id*.  Since CP Franchising has properly documented its expenses and the defendant apparently does not contest the amount, the Court will award the full $33,673.94 sought.

### IV.   CONCLUSION

To account for potential inefficiencies, duplicative work, degree of success and documentation issues, CP Franchising's attorneys' fees are reduced as follows: 1) the total award is reduced by $129,190.00 as CP Franchising proposes; and 2) the balance is further reduced by twenty-five percent.  Accordingly, CP Franchising is awarded $296,641.13 in fees.  CP Franchising is also awarded $33,673.94 in expenses for a total award of $330,315.07.  The defendant shall remit the total amount due to CP Franchising's counsel within sixty days of the date of this order.

/s/ Donald L. Cabell  
DONALD L. CABELL, U.S.M.J.

DATED:  August 3, 2015